[No. 18305.   In Bank.—March 21, 1895.]

WILLIAM ALVORD ET AL., TRUSTEES, APPELLANTS, *v.* SPRING VALLEY GOLD COMPANY ET AL., RESPONDENTS.

CORPORATIONS—CONVEYANCE FROM FOREIGN TO DOMESTIC CORPORATION—ASSUMPTION OF MORTGAGE—ESTOPPEL TO DENY VALIDITY.—Where a mortgage was made by a foreign corporation on mining property situated in California, and the property was subsequently conveyed to a California corporation which expressly assumed, undertook, and bound itself to pay the mortgage indebtedness, the domestic corporation is thereby estopped to deny the validity of the mortgage, and the effect of the recital is to charge the land with the lien as effectually as if the purchaser had executed a mortgage of the same purport.

ID.— CONSTRUCTION OF DEED — SPECIFIC COVENANTS NOT CONTROLLED BY GENERAL LANGUAGE. — Where the deed recites the existence of a specific bonded indebtedness, and that it is subject to a specific mortgage given to secure that indebtedness, and contains an express covenant to pay all of the present indebtedness "above specified," the specific language cannot be controlled by general language following by which the grantee undertakes to perform all the "lawful obligations" of the grantor, and the effect of the specific covenants is not limited to lawful obligations.

SECONDARY EVIDENCE—PRELIMINARY PROOF.—Secondary evidence of the contents of a missing document not in possession of the adverse party, cannot be given when the proof shows that there is a person who might probably have it, of whom no inquiry has been made, but the preliminary proof should show that inquiry had been made, without result, of every person who, according to the evidence, would be likely to have the document, or to know of its whereabouts.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*T. Z. Blakeman,* for Appellants.

As the Spring Valley Gold Company expressly assumed the mortgage upon the property executed by its grantor, it cannot dispute the validity of the mortgage. (1 Jones on Mortgages, 4th ed., secs. 736, 744; *Klapworth* v. *Dressler,* 78 Am. Dec. 87, note; *Crawford* v. *Edwards,* 33 Mich. 354; *Parkinson* v. *Sherman,* 74 N. Y. 88; 30 Am. Rep. 268; *Pidgeon* v. *Trustees,* 44 Ill. 501; *Greither* v. *Alexander,* 15 Iowa, 470; *Howard* v. *Chase,* 104 Mass. 249; *Freeman* v. *Auld,* 44 N. Y. 50, 53; *Gifford* v. *Father Mathew T. A. B. Soc.,* 104 N. Y. 139, 141; *Daub* v. *Englebach,* 109 Ill. 267, 271; *Sidwell* v. *Wheaton,* 114 Ill. 267, 270; *Miller* v. *Thompson,* 34 Mich. 10, 11; *Millington* v. *Hill,* 47 Ark. 301–12; *Pope* v. *Porter,* 33 Fed. Rep. 7–10; *Ross* v. *Worthington,* 11 Minn. 438; 88 Am. Dec. 96.)    When one purchases land expressly subject to a mortgage, the land is as effectually charged with the encumbrance of the mortgage debt as if the purchaser had himself made a mortgage of the land to secure it.    The mortgage so assumed has priority both as against the purchasers and those claiming liens under judgments subsequently rendered.    (Jones on Mortgages, sec. 736, and cases cited; Mr. Freeman's note to *Klapworth* v. *Dressler,* 78 Am. Dec. 83; *Sweetzer* v. *Jones,* 35 Vt. 317; 82 Am. Dec. 639; *Berry* v. *Whitney,* 40 Mich. 65; *Cobb* v. *Dyer,* 69 Me. 494; *Fuller* v. *Hunt,* 48 Iowa, 163.)    Even if the instrument set out in the complaint was not the legal mortgage of the Spring Valley Hydraulic Gold Company, still it certainly was an equitable mortgage. (*Love* v. *Sierra etc. Co.,* 32 Cal. 649; 91 Am. Dec. 602; *Remington* v. *Higgins,* 54 Cal. 620; *Peers* v. *McLaughlin,* 88 Cal. 297.)    Secondary evidence of the contents of the minute-book was ad-

missible. (*Gordon* v. *Searing,* 8 Cal. 50; *Zellerbach* v. *Allenberg,* 99 Cal. 57.)

*C. W. Cross,* for Spring Valley Gold Company, Respondent.

The mortgage is not binding upon the Spring Valley Gold Company, as it was not executed in accordance with the statute of 1880, relating to mining corporations. (Stats. 1880, p. 131; *Alta Silver Min. Co.* v. *Alta Placer Min. Co.,* 78 Cal. 629; *McShane* v. *Carter,* 80 Cal. 310; *Pekin Min. etc. Co.* v. *Kennedy,* 81 Cal. 356; *Forbes* v. *San Rafael Turnpike Co.,* 50 Cal. 340; *Smith* v. *Eureka Flour Mills Co.,* 6 Cal. 1; 1 Lawson's Rights, Remedies, and Practice, sec. 384; 2 Morawetz on Corporations, secs. 626, 628; *Duke* v. *Markham,* 105 N. C. 131; 18 Am. St. Rep. 889; *Leggett* v. *New Jersey etc. Co.,* 1 N. J. Eq. 541; 26 Am. Dec. 728; *Peirce* v. *New Orleans Building Co.,* 9 La. 397; 29 Am. Dec. 448; *Steam Coal Co.* v. *Coal and Iron Co.,* 77 Am. Dec. 320; *Isham* v. *Bennington Iron Co.,* 19 Vt. 232; *Wheelock* v. *Moulton etc. Mfg. Co.,* 15 Vt. 519, 520, 524.) The appellant cannot now set up an estoppel as against the respondent, as no estoppel was pleaded. (*Davis* v. *Davis,* 26 Cal. 23; 85 Am. Dec. 157.) None of the elements of an estoppel were either pleaded, proven, or found. In order to constitute an estoppel four things must concur: 1. The party making the admissions or declarations must know the true state of his own title to be estopped. (*Boggs* v. *Merced Min. Co.,* 14 Cal. 280; *McCracken* v. *San Francisco,* 16 Cal. 591; *Green* v. *Prettyman,* 17 Cal. 401; *Maye* v. *Yappen,* 23 Cal. 306; *Carpentier* v. *Thirston,* 24 Cal. 281; *Davis* v. *Davis,* 26 Cal. 23; 85 Am. Dec. 157; *Martin* v. *Zellerbach,* 38 Cal. 300; 99 Am. Dec. 365; *Davenport* v. *Turpin,* 43 Cal. 597; *Smith* v. *Penny,* 44 Cal. 165.) 2. They must be made with the intent to deceive, or with culpable negligence. (*Boggs* v. *Merced Min. Co., supra; McCracken* v. *San Francisco, supra; Green* v. *Prettyman, supra; Maye* v. *Yappen, supra; Carpentier* v. *Thirston, supra; Davis* v. *Davis, supra; Frank-*

*lin* v. *Dorland,* 28 Cal. 175; 87 Am. Dec. 111; *Love* v.
*Shartzer,* 31 Cal. 495; *Martin* v. *Zellerbach, supra; Smith*
v. *Penny, supra.*) 3. The party deceived must be igno-
rant of the true state of facts, and without convenient
means of knowledge. (*Burritt* v. *Dickson,* 8 Cal. 113;
*Ferris* v. *Coover,* 10 Cal. 590; *Chandler* v. *Booth,* 11 Cal.
342; *Boggs* v. *Merced Min. Co., supra; McCracken* v. *San
Francisco, supra; Green* v. *Prettyman, supra; Skillman* v.
*Lachman,* 23 Cal. 207; 83 Am. Dec. 96; *Maye* v. *Yappen,
supra; Carpentier* v. *Thirston, supra; Franklin* v. *Dorland,
supra; Bowman* v. *Cudworth,* 31 Cal. 148; *Martin* v.
*Zellerbach, supra; Richards* v. *Wetmore,* 66 Cal. 365.)
4. Turpitude is requisite in order to an estoppel *in
pais* which is applied only to prevent a wrongdoer from
taking fraudulent advantage of his own wrong. (*Chand-
ler* v. *Booth, supra; Boggs* v. *Merced Min. Co., supra; Mc-
Cracken* v. *San Francisco, supra; Kelly* v. *Taylor,* 23 Cal.
15; *Carpentier* v. *Thirston,* 24 Cal. 269; *Davis* v. *Davis,
supra; Franklin* v. *Dorland, supra; Wilson* v. *Castro,* 31
Cal. 421; *Love* v. *Shartzer, supra; Martin* v. *Zellerbach,
supra; Farish* v. *Coon,* 40 Cal. 33; *Smith* v. *Penny, supra;
Stockman* v. *Riverside etc. Co.,* 64 Cal. 57; *Anaheim
Water Co.* v. *Semi-Tropic Co.,* 64 Cal. 195.) The party
invoking the estoppel must show some act or omission
by which he was misled to his injury. (*Kelly* v. *Taylor,
supra; Skillman* v. *Lachman, supra; Carpentier* v. *Thirs-
ton, supra; Bowman* v. *Cudworth, supra; Martin* v. *Zel-
lerbach, supra; Barstow* v. *Savage Mfg. Co.,* 64 Cal. 388;
49 Am. Dec. 705.) Secondary evidence of the contents
of the minute-book was inadmissible. (Taylor on Cor-
porations, sec. 263; Code Civ. Proc., secs. 1855, 1937,
1938; *Norris* v. *Russell,* 5 Cal. 251; *Folsom* v. *Scott,* 6 Cal.
460; *Caulfield* v. *Sanders,* 17 Cal. 573; *Lawrence* v. *Fulton,*
19 Cal. 684, 688, 689; *Patterson* v. *Keystone Min. Co.,* 30
Cal. 360, 365; *King* v. *Randlett,* 33 Cal. 318; *Taylor* v.
*Clark,* 49 Cal. 671.)

VAN FLEET, J.—This was an action to foreclose a
mortgage alleged to have been given by the Spring Val-

ley Hydraulic Gold Company, a New York corporation, on its mining property in California, to secure payment of certain bonds of that corporation. The court below held the mortgage invalid for want of a compliance with the act of April 23, 1880 (Stats. 1880, p. 131), which requires the ratification of the holders of at least two-thirds of the capital stock. Many interesting questions have been argued by counsel, but only one of them need be considered.

The complaint contained, among other things, the following allegations: ".That on or about the 23d day of July, 1886, the said Spring Valley Hydraulic Gold Company duly granted and conveyed unto the defendant, the Spring Valley Gold Company, all of the property described in said indenture of mortgage, together with other property, in consideration of which grant and conveyance the Spring Valley Gold Company assumed, undertook, and bound itself to pay, and agreed to pay, all of the indebtedness then existing of the Spring Valley Hydraulic Gold Company, and particularly the indebtedness represented by the aforesaid bonds, and secured as aforesaid by the said indenture of mortgage; and undertook and agreed to assume toward all the creditors and obligees of said Spring Valley Hydraulic Gold Company the position of debtor and obligor, and to be substituted in the place and stead of said Spring Valley Hydraulic Gold Company as such debtor and obligor."

This allegation was not denied by the answer, but the execution of the mortgage therein referred to was put in issue.

The evidence showed that in July, 1886, a deed was executed from the Spring Valley Hydraulic Gold Company to the defendant, the Spring Valley Gold Company (which is a California corporation), for the property in question, which deed was executed by both of the parties thereto, and contained the following clause: " Subject, nevertheless, to a certain mortgage or deed of trust on said premises, bearing date May 14, 1881, made by

the said Spring Valley Hydraulic Gold Company to William Alvord, F. F. Low, and Henry B. Laidlaw, trustees, to secure the payment of $200,000, and interest thereon, and recorded in the office of the recorder of Butte county, California, June 3, 1881, in Book M of Mortgages, pages 773 to 782, and subject also to an indebtedness of the said the Spring Valley Hydraulic Gold Company of about $165,000, in addition to the above-mentioned indebtedness of $200,000, secured by said mortgage, or deed of trust, as aforesaid.

"And the party of the second part, in consideration of the conveyance to it of the property aforesaid, does hereby agree and undertake and bind itself to pay all present indebtedness of the party of the first part above specified, and all other indebtedness whatsoever of the party of the first part, and to perform and discharge all the liabilities and lawful obligations now incurred by or imposed upon the party of the first part; and the party of the second part does hereby further undertake and agree to assume toward all the creditors and obligees of the party of the first part the position of debtor and obligor, and to be substituted in the place and stead of the party of the first part, as such debtor and obligor."

The action of the board of directors of the Spring Valley Gold Company, in executing and accepting that deed, was expressly approved and ratified by the unanimous vote of the stockholders of that company, cast at a meeting at which the entire subscribed capital stock was duly represented.

Conceding, then, that the act of 1880 applied to foreign corporations, and that a compliance with its provisions on the part of the New York company was not proven (on which points we express no opinion), we are nevertheless of opinion that neither the Spring Valley Gold Company nor the other defendants who claim under that company by title subsequent are in a position to avail themselves of that defense. The deed referred to contains an unequivocal recognition of the

mortgage in question as a valid and subsisting obligation and lien on the property, and a promise to pay it as a part of the consideration for the conveyance. It is settled by an almost unanimous line of decisions in this country, approved by all text-writers, that such a recital in a deed, even when the deed is not executed by the grantee, is conclusive evidence in favor of the mortgagee and against the grantee in the deed of the existence and validity of the mortgage. The effect of such a recital is to charge the land with the lien as effectually as if the purchaser had himself executed a mortgage of that purport. It is contended by respondents that the case of *Biddel* v. *Brizzolara,* 64 Cal. 354, is in conflict with this rule, but we are unable to perceive any such conflict.

The judgment in that case was in accordance with section 1559 of the Civil Code, which section, however, does not appear to have been there brought to the attention of the court. (See, also, *Flint* v. *Cadenasso,* 64 Cal. 83.) Under that section it is clear that the mortgagee has the right to enforce such a contract as was contained in the deed in question, and the grantee is estopped by its recitals. The estoppel being by deed, it was not necessary to plead it.

Respondents contend that the effect of the covenants in the deed in question is to be limited to " lawful obligations " of the grantor, and such was the construction adopted by the court below. Such a construction is contrary to the plain meaning of the language used. The deed recites the existence of a specific bonded indebtedness, and that it is " subject to " a specific mortgage given to secure that indebtedness, and contains a covenant on the part of the grantee " to pay all of the present indebtedness of the party of the first part, *above specified,*" and also all other indebtedness. This specific language cannot be controlled by the general language following, by which the grantee undertakes to perform all the " lawful obligations " of the grantor. The latter expression must be taken to constitute a cov-

enant additional to the specific covenant with relation to this mortgage, and not as in any way limiting it.

The deed itself was put in evidence, and was competent, and, as we have seen, conclusive evidence as against the grantees and those claiming under them of the due execution and validity of the mortgage. The finding of the court, therefore, that the mortgage was never executed was against the evidence, and the judgment must for that reason be reversed.

As the matters assigned as errors of law will probably not arise on another trial, we need not notice them. It is, however, proper to remark that secondary evidence of the contents of a missing document not in the possession of the adverse party cannot be given when the proof shows that there is a person who might probably have it, and of whom no inquiry has been made. The preliminary proof should show that inquiry has been made, without result, of *every* person who, according to the evidence, would be likely to have the document, or to know of its whereabouts.

The judgment appealed from is reversed, and the cause remanded for a new trial.

GAROUTTE, J., HARRISON, J., McFARLAND, J., and BEATTY, C. J., concurred.